112 P.3d 713

Debra YAMAGATA and Joseph T. Toma, Individually and as the Special Administrator for the Estate of Ross Yamagata–Toma, Plaintiffs–Appellants,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Herb Ushiroda, John Does 1–5, Jane Does 1–5, Doe Corporations 1–5, Doe Partnerships 1–5, Doe Entities 1–5, and Doe Governmental Units 1–5, Defendants–Appellees.

No. 25757.

Supreme Court of Hawai'i.

May 26, 2005.

Matthew S. Kohm, Wailuku, on the briefs, for plaintiffs-appellants.

Lisa M. Ginoza (McCorriston Miller Mukai MacKinnon LLP), Honolulu, on the briefs, for defendant-appellee State Farm Mutual Automobile Insurance Company.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

Opinion of the Court by DUFFY, J.

Plaintiffs-appellants Debra Yamagata and Joseph T. Toma (individually and as the Special Administrator for the Estate of Ross Yamagata–Toma) [hereinafter collectively, the plaintiffs] appeal from the Circuit Court of the Second Circuit's April 7, 2003 final judgment.[1] As points of error, the plaintiffs argue that the circuit court erred in granting summary judgment in favor of defendant-appellee State Farm Mutual Automobile Insurance Company (State Farm) and denying the plaintiffs' cross-motion for summary judgment.

The sole issue on appeal is whether the plaintiffs are entitled to Accidental Death Benefits for the death of their teenage son, who died while driving his motorcycle. Based on the following, we vacate the circuit court's grant of summary judgment in favor of State Farm and remand with instructions to grant the plaintiffs' cross-motion for summary judgment as to the applicability of death benefits coverage.

## I. BACKGROUND

### A. Factual Background

On October 6, 1998, eighteen-year-old Ross Yamagata–Toma was killed while driving a motorcycle on Ka'ahumanu Avenue in Wailuku, Maui. The plaintiffs allege that the accident occurred when the driver of a pickup truck driving in the opposite direction made a left-hand turn in front of Yamagata–Toma.

At the time of Yamagata–Toma's death, Yamagata–Toma's parents had three automobile insurance policies with State Farm. Yamagata–Toma lived with his parents and was therefore an "insured" under these policies; State Farm paid the plaintiffs underinsured motorist (UIM) benefits but denied the plaintiffs death benefits coverage.

State Farm based its rejection of death benefits coverage on the following policy language:

THERE IS NO COVERAGE FOR *BODILY INJURY*:

. . . .

> 5. TO THE OPERATOR OF A MOTORCYCLE OR MOTOR SCOOTER INVOLVED IN THE ACCIDENT.

The policy defined "bodily injury" as "bodily injury to a *person* and sickness, disease, or death which results from it."

The plaintiffs argued (and continue to argue) that the exclusion cited by State Farm is ambiguous and that the exclusion should therefore be construed against State Farm. Alternatively, the plaintiffs contend that the exclusion is unambiguous and that it clearly does not apply to them. The plaintiffs also argue that, pursuant to Hawaii's Motor Vehicle Insurance Law, Article 10C of Hawai'i Revised Statutes (HRS) chapter 431, death benefits coverage is a remedial, personal, portable coverage that should be treated in a similar manner as UIM or uninsured motorist (UM) benefits; because the plaintiffs were entitled to UIM benefits, they argue, they are also entitled to death benefits.

### B. Procedural Background

On October 6, 2000, the plaintiffs filed a complaint against State Farm requesting, *inter alia*, a declaration that the plaintiffs were entitled to death benefits coverage.[2] The plaintiffs filed their first amended complaint on November 21, 2000. State Farm answered the complaints and, on June 14, 2001, moved for summary judgment. On the same day, the plaintiffs filed their cross-motion for summary judgment on the issue of death benefits coverage.

On July 17, 2002, after hearing the parties' arguments on their respective motions for summary judgment, the circuit court granted summary judgment in favor of State Farm. The circuit court entered judgment in favor of State Farm on September 24, 2002. The plaintiffs filed their notice of appeal on September 30, 2002; however, this court dis-

---

**1.** The Honorable Shackley F. Raffetto presided over this matter.

**2.** In addition to the death benefits coverage issue, the plaintiffs' first amended complaint also

sought resolution of a dispute over the amount of UIM benefits to which the plaintiffs were entitled. The instant appeal, however, focuses on death benefits only.

missed the plaintiffs' appeal on March 24, 2003 for lack of appellate jurisdiction because the circuit court's judgment did not satisfy the separate document requirement of Hawai'i Rules of Civil Procedure (HRCP) Rule 58.[3] On April 7, 2003, the circuit court entered final judgment as to all claims and parties, and the plaintiffs filed a second notice of appeal the following day. ·

## II. STANDARDS OF REVIEW

### A. Summary Judgment

 We review the circuit court's grant or denial of summary judgment *de novo*. *Hawaii Community Federal Credit Union v. Keka*, 94 Hawai'i 213, 221, 11 P.3d 1, 9 (2000). The standard for granting a motion for summary judgment is settled:

[S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion.

*Id.* (citations and internal quotation marks omitted).

*Coon v. City & County of Honolulu*, 98 Hawai'i 233, 244–45, 47 P.3d 348, 359–60 (2002) (alteration in original).

### B. Statutory Interpretation

 We review the circuit court's interpretation of a statute *de novo*. *State v. Pacheco*, 96 Hawai'i 83, 94, 26 P.3d 572, 583 (2001). · Our statutory construction is guided by established rules:

When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.

. . . .

*Id.* at 94–95, 26 P.3d at 583–84 . . . .

*Coon*, 98 Hawai'i at 245, 47 P.3d at 360. *See also* HRS § 1–16 (1993) ("Laws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called in aid to explain what is doubtful in another.").

## III. DISCUSSION

 The circuit court erred in granting summary judgment in favor of State Farm because HRS § 431:10C–302 (Supp.2004),[4] entitled "Required optional additional insurance," required State Farm to offer death benefits coverage for death arising out of *all* motor vehicle accidents, regardless of whether a motorcycle was involved. Therefore, we vacate the circuit court's April 7, 2003 final judgment and remand with instructions ·to grant summary judgment in favor of the plaintiffs.

---

**3.** HRCP Rule 58, entitled "ENTRY OF JUDGMENT," provides:

Unless the court otherwise directs and subject to the provisions of Rule 54(b), judgment upon the verdict of a jury shall be entered forthwith by the clerk; but the court shall direct the appropriate judgment to be entered upon a special verdict or upon a general verdict accompanied by answers to interrogatories returned by a jury pursuant to Rule 49. When the court directs that a party recover only money or costs or that all relief be denied, the clerk shall enter judgment forthwith upon

receipt by him of the direction; but when the court directs entry of judgment for other relief, the judge shall promptly settle or approve the form of the judgment and direct that it be entered by the clerk. The filing of the judgment in the office of the clerk constitutes the entry of the judgment; and the judgment is not effective before such entry. The entry of the judgment shall not be delayed for the taxing of costs. Every judgment shall be set forth on a separate document.

**4.** This statute was last amended in 1998.

HRS § 431:10C–302 provides in relevant part:

(a) In addition to the motor vehicle insurance coverages described in section 431:10C–301, every insurer issuing a motor vehicle insurance policy shall make available to the insured the following optional insurance under the following conditions....

....

(5) An option in writing for minimum coverage for death benefits *for death arising out of a motor vehicle accident* in an amount of $25,000, to be paid to the surviving spouse, for the benefit of the spouse and dependent children, or if there are no surviving spouse or dependent children, then to the estate. Coverage shall also be made available for increased death benefits in increments of $25,000 up to $100,000; however, nothing shall prevent an insurer from making available higher limits of coverage....

(Emphasis added.) The term "motor vehicle accident" is defined in HRS § 431:10C–103 (Supp.2004) as "an accident arising out of the operation, maintenance, or use of a motor vehicle, including an object drawn or propelled by a motor vehicle."[5]

▮ Reading these provisions together, State Farm was required to offer death benefits coverage for *any* death arising out of the operation, maintenance, or use of a motor vehicle. Although HRS § 431:10C–302(a)(5) would permit State Farm to exclude death benefits coverage arising out of a "motorcycle accident," defined by HRS § 431:10G–101 (1993) as "an accident arising out of the operation, maintenance, or use of a motorcycle, but not involving a motor vehicle,"[6] the plain language of HRS § 431:10C–302(a)(5) prohibits State Farm from writing its insurance policies so as to restrict death benefits coverage to certain types of motor vehicle accidents. *See State v. Richie*, 88 Hawai'i 19, 30, 960 P.2d 1227, 1238 (1998) (" 'It is a cardinal rule of statutory interpretation that, where the terms of a statute are plain, unambiguous and explicit, we are not at liberty to look beyond that language for a different meaning. Instead, our sole duty is to give effect to the statute's plain and obvious meaning.' " (Quoting *Alvarez v. Liberty House, Inc.*, 85 Hawai'i 275, 278, 942 P.2d 539, 542 (1997).)). As we have stated, "[I]nsurers have the same rights as individuals to limit their liability[ ] and to impose whatever conditions they please on their obligation, *provided they are not in contravention of statutory inhibitions or public policy." Dairy Rd. Partners v. Island Ins. Co., Ltd.*, 92 Hawai'i 398, 411, 992 P.2d 93, 106 (2000) (emphasis added) (second set of brackets in original) (citations and internal quotation signals omitted).

In this case, Yamagata–Toma's death arose out of a collision between a motor vehicle and a motorcycle. The collision, by statutory definition, was a motor vehicle accident. The fact that Yamagata–Toma was operating a motorcycle at the time he was involved in the motor vehicle accident is not relevant, as State Farm was required by statute to offer death benefits coverage for death arising out of a motor vehicle accident. Therefore, the circuit court erred in granting summary judgment in favor of State Farm.

## IV. CONCLUSION

Based on the foregoing, we vacate the circuit court's April 7, 2003 final judgment and remand with instructions to grant the plaintiffs' cross-motion for summary judgment as to the applicability of death benefits coverage.

---

5. Although the legislature amended HRS § 431:10C–103 several times in the last few years, the definition of "motor vehicle accident" did not change during the course of these proceedings. *See* HRS § 431:10C–103 (1993).

6. *See also* HRS § 431:10C–103 (excluding "motorcycles and motor scooters" from the definition of "motor vehicle" and defining "motor vehicle accident" as "an accident arising out of the operation, maintenance, or use of a motor vehicle").