124 P.3d 930 (2005)
109 Hawai`i 185
ORTHOPEDIC ASSOCIATES OF HAWAII, INC.; Robert E. Atkinson, M.D.; Gregory H. Chow, M.D.; Albert C.K. Chun-Hoon, M.D.; Darryl M. Kan, M.D.; Thomas J. Kane, III, M.D.; Dean G. Lorich, M.D.; Jay M. Marumoto, M.D.; Calvin S. Oishi, M.D.; Alan N. Oki, M.D.; Alan Pavel, M.D.; Allen B. Richardson, M.D.; Daniel I. Singer, M.D.; Honolulu Sports Medical Clinic, Inc.; Chet Nierenberg, M.D.; Robert Smith, M.D.; Peter Diamond, M.D.; Maui Radiology Consultants; Eugene C. Wasson, III, M.D.; David J. Heeney, M.D.; George S. Boren, M.D.; Christopher A. Neal, M.D.; Scott R. Boren, M.D.; James A. Bendon, M.D.; Geoffrey M. Murrish; Hawaii Orthopaedics, Inc.; Edward Gutteling, M.D.; Jean Marine, M.D.; Arthur Rehme, M.D.; John Azzato, M.D.; Frank Osborne, M.D.; Rolf Drinhaus, M.D.; John Chase, M.D.; Thomas Schott, M.D.; William Faloon, M.D.; Patrick Padilla, M.D.; Denise Williamson, M.D.; Jon Scarpino, M.D.; Alan Larimer, M.D.; Robert Medoff, M.D.; Linda J. Rasmussen, M.D.; Edward A. Alquero, M.D., individually and dba Edward A. Alquero, M.D., Inc.; Kheng See Ang, M.D.; Steven Azuma, M.D.; Lee Au, M.D.; Ernest L. Bade, M.D., individually and dba Ernest L. Bade, Inc.; Alistair Bairos, M.D.; Charles H. Ballard, D.O., individually and dba Kihei Wailea Medical Center; John Bellati, M.D., individually and dba West Hawaii Orthopedics, Inc.; Barry Blum, M.D., individually and dba Barry Blum, M.D., Inc.; Wiley Brunel, M.D.; Susan Cauley, M.D., individually and dba Susan Cauley, M.D., Inc.; Denis Chan, M.D., individually and dba Denis Chan, M.D., Inc.; Robert K. Chinn, M.D.; Kevin C. Chen, M.D., individually and dba Kevin C. Chen, M.D., Inc., F.A.C.O.C.; Mark L. Cohen, M.D., individually and dba Mark L. Cohen, M.D., Inc.; Maxwell A. Cooper, M.D., individually and dba Maxwell A. Cooper, M.D., Ltd.; Kent Davenport, M.D.; Geoffrey V. Davis, M.D., individually and dba Geoffrey V. Davis, M.D., Inc.; Teresa Ann Denney, D.O.; Alan C. deSilva, M.D., individually and dba Alan C. deSilva, M.D., Inc.; Michael J. Dimitrion, M.D., individually and dba Michael J. Dimitrion, M.D., Inc.; Lorne K. Direnfeld, M.D., individually and dba Maui Neurological Associates, Inc.; Fortunato V. Elizaga, M.D.; Judy Ann Emanuel, D.O.; Paul T. Esaki, M.D., individually and dba Paul T. Esaki, M.D., Inc.; Frank A. Farren, M.D., individually and dba Frank A. Farren, M.D., Inc.; Gerald D. Faulkner, M.D., individually and dba Gerald D. Faulkner, M.D., Inc.; Peter Gabin, M.D.; Peter A. Galpin, M.D.; Kristin Gebrowsky, M.D.; James L. Grobe, M.D.; Jed A. Groom, M.D.; Jon Harrell, M.D.; Robert S. Harvey, M.D., individually and dba Robert S. Harvey, M.D., Inc.; John Heaster, M.D.; W. Douglas B. Hiller, M.D., individually and dba Hiller Orthopedic, Inc.; Jonathan James, M.D., individually and dba Kona Coast Internal Medicine, Inc.; Alfonso Jimenez, M.D.; Donald A. Jones, M.D.; Aaron S. Kaichi, M.D.; Raymond Kang, M.D., individually and dba Omnicare Medical Clinic; Neil Thomas Katz, M.D., individually and dba Maui Sports Medicine Center, Inc.; William G. Kepler, M.D.; Bradon Yoshio Kimura, M.D.; Richard Y. Kimura, M.D., individually and dba Richard Y. Kimura, M.D., Inc.; Roger T. Kimura, M.D.; Allan R. Kunimoto, M.D.; Clifford K.H. Lau, M.D., individually and dba Clifford K.H. Lau, M.D., Inc.; Della Lin, M.D.; Blase B. Lee Loy, M.D.; Panu Limpisvasti, M.D.; Stephen Lim, M.D.; Dennis B. Lind, M.D.; Robert F. Lindberg, M.D.; James Lumeng, M.D.; Eugene Magnier, M.D.; Scott Mandel, M.D.; Franklin Marcus, M.D.; Ikuo Maeda, M.D.; Christopher M. Marsh, M.D.; Robert C. Marvit, M.D.; Gerald W. Mayf[i]eld, M.D.; Michael R. McCarthy, M.D., individually and dba McCarthy Orthopedic Rehabilitation & Sports Medicine, Inc.; Timothy F. McDevitt, M.D.; Gerald J. McKenna, M.D.; Morris Mitsunaga, M.D., individually and dba Morris Mitsunaga, M.D., Inc.; Patrick Chandler Murray, M.D.; Rolland K. Nakashima, M.D., individually and dba Rolland K. Nakashima, M.D., Inc.; George F. Nardin, M.D.; Frederick A. Nitta, M.D., individually and dba Frederick A. Nitta, M.D., Inc.; James E. Oda, *931 M.D., individually and dba James E. Oda, M.D., Inc.; Timothy F. Olderr, M.D.; David Lee Pang, M.D., individually and dba David Lee Pang, M.D., Inc.; Michael Anthony Pasquale, D.O.; Richard Alexander Perrie, M.D.; Ronald P. Peroff, M.D., individually and dba Ronald P. Peroff, M.D., Inc.; Robert L. Peterson, M.D., individually and dba Robert L. Peterson, M.D., Inc.; Michael Soo-Chen PI, M.D.; Jordan S. Popper, M.D., individually and dba Jordan S. Popper, M.D., Inc.; David J. Randell, M.D.; Elmber H. Ratzlaff, M.D., individually and dba Kihei Clinic; Gary S. Rinzler, M.D.; Peter Andrew Roney, M.D.; Charles Salzberg, M.D., individually and dba Charles Salzberg, M.D., Inc.; Thomas H. Sakoda, M.D.; Robert L. Schiff, M.D.; James F. Scoggin, III, M.D.; Michael H.T. Sia, M.D., individually and dba Michael H.T. Sia, M.D., Inc.; Robert Reid Sloan, M.D.; John S. Smith, M.D., individually and dba John S. Smith, M.D., Inc.; Terry G. Smith, M.D.; Charles A. Soma, M.D., individually and dba Northshore Orthopaedics and Sports Medicine; Keith Soper, M.D. individually and dba Maui Spinoscopy; Thomas J. Spallino, M.D.; Susan Steinemann, M.D.; John W. Stiller, M.D., F.A.A.N.; Allen Strasberger, M.D., individually and dba Pacific Plastic Surgery, Inc.; Randall M. Suzuka, M.D., individually and dba Haleiwa Family Clinic, Inc. dba Haleiwa Family Health Center; Ramon Sy, M.D.; Masao Takai, M.D., individually and dba M. Takai, M.D., Inc.; Terry A. Vernoy, M.D., individually and dba Terry A. Vernoy, M.D., Inc.; Dennis L. Watkins, M.D.; Franklin Yamamoto, M.D.; Choon Kia Yeo, M.D., individually and dba Choon Kia Yeo, M.D., Inc.; Walter K.W. Young, M.D.; Ira D. Zunin, M.D., M.P.H.; Cholbae Kim, M.D.; Franklin Ramos, PH.D.; James A. Ferrier, M.D.; and
Hawaii State Chiropractic Association, Inc.; Robert J. Abdy, D.C., individually and dba Robert J. Abdy, D.C., Inc.; Lisa Baptista, D.C., individually and dba Baptista Chiropractic; Larry Belcher, D.C.; Gary Bell, D.C.; Gary M. Bell, D.C., individually and dba Spinal Dynamics Healthcare Clinic, also dba Kamaaina Chiropractic; Craig Benzel, D.C.; Beverly Bigbee, D.C.; Thomas Edward Bowles, D.C., individually and dba Haleiwa Chiropractic Clinic; Chalmers Lawson Cannon, D.C.; Joseph Cardinalli, D.C.; Keith Castilloux, D.C.; Rik Cederstrom, D.C.; Donald T.L. Ching, D.C.; Donna-Lynn Ching, D.C., individually and dba Kaimuki Back Care Center; Ames Chow, D.C.; Rodney Chun, D.C.; Ted Chun, D.C., individually and dba Mililani Back Care Center, Inc., also dba Downtown Chiropractic Center; Randy R. Collins, D.C., individually and dba Randy R. Collins, D.C., Inc., also dba T.A.R.G.E.T.; Lawrence Connors, D.C., individually and dba Family Chiropractic Center, also dba Windward Rehabilitation Center, also dba Windward Therapeutic Massage Center; Jeffrey Daso, D.C., individually and dba Keahou Chiropractic; Frank Davis, D.C., Edward Dawrs, D.C. and Jill Dawrs, D.C., individually and dba Keawe Chiropractic Center; Rhody Edwards, D.C.; Linda A. Fickes, D.C.; Robert Gallagher, D.C., individually and dba Tri Star Health Care, Inc.; William Carl Gallegos, M.S., D.C.; Timothy A. Griffin, D.C.; Robert Harrison, D.C., individually and dba Robert Harrison, D.C., Inc., also dba Spinal Dynamics Healthcare Clinic; James Hattaway, D.C.; Tim H. Hendlin, D.C., individually and dba Hendlin Chiropractic Health Center; Randall W. Hill, D.C.; individually and dba Chirocenter; Scott T. Hirashiki, D.C., individually and dba Hirashiki Chiropractic Center, formerly known as Oahu Family Chiropractic Center; Alice Holm-Ogawa, D.C.; Karl Hynes, D.C.; Andrew M. Janssen, D.C.; John Jarolimek, D.C.; Steven Key, D.C., individually and dba Ohana Hale Chiropractic Clinic, Inc.; Gina Kim, D.C.; William Kim, D.C., individually and dba Injury Care Clinic; Lindsey J. Kimura, D.C.; individually and dba Hawaii Chiropractic Clinic; Eugene Kitts, D.C., individually and dba Newtown Chiropractic *932 & Naturopathic Clinic, Inc.; Robert Klein, D.C., individually and dba Klein Chiropractic Center; Tim F. Krantz, D.C., individually and dba Chiropractic Care of Hawaii; Douglas Kroll, D.C.; Paul W.Y. Kurihara, D.C., LMT, individually and dba Chiropractic Shiatsu Health Center; Ann Landes, D.C.; Alejandro Lazo, D.C., individually and dba Alejandro Lazo, D.C., Inc., also dba Maui Spinal Care, formerly known as Masters, D.C., individually and dba Masters Back and Neck Pain Relief Center; Dale McSherry, D.C.; Dennis Momyer, D.C., individually and dba Momyer Chiropractic; Stacy T. Nagareda, D.C.; Dean Nelson, D.C., individually and dba Windhorse Healthcare; Yu Nguyen, D.C.; Susan A. Nickerson, D.C.; individually and dba Diamond Head Chiropractic; Rex K. Niimoto, D.C.; individually and dba Rex Niimoto, D.C., Inc., also dba Pearlridge Chiropractic Center; Chris Nowicki, D.C.; Barry J. Nutter, D.C., individually and dba Holistic Wellness Center of Hawaii, Inc., also dba Nutter Chiropractic & Sports Medicine Clinic, Inc.; Ryoichi Ogawa, D.C., individually and dba Ogawa Chiropractic, Inc.; Nicholas G. Opie, D.C., individually and dba Nicholas G. Opie, D.C., Inc.; Maude Panganiban, D.C.; Greg Y. Song, D.C., individually and dba Valley Isle Chiropractic; Harvelee Leite-Ah Yo, D.C.; Howard M. Martin, II, D.C., individually and dba Big Island Chiropractic, also dba Accident Industrial Injury Clinic; Kurt Mariano, D.C.; Michael J. Panganiban, D.C.; Alan R. Pearson, D.C.; Rand Pellegrino, D.C.; Paul K. Pestana, D.C.; individually and dba Aina Haina Chiropractic Clinic; Michael C. Pierner, D.C., individually and dba Kihei Chiropractic Center, Inc.; Clinic; James Pleiss, D.C.; Albert L. Police, D.C.; Jill Potter, D.C.; John T. Rathjen, D.C., individually and dba Rathjen Clinic; Lawrence A. Redmond, D.C., individually and dba Kaimuki Chiropractic Center; Dennis G. Rahtigan, D.C.; Jeffrey B. Ronning, individually and dba Ronning Chiropractic Research, also dba Family Chiropractic Clinic of Kaimuki; Gary Ryan, D.C., individually and dba Ryan Chiropractic Offices; Gary K. Saito, D.C., individually and dba Saito Chiropractic Office; Laurie Shebs, D.C.; Mitchel T. Shimamura, D.C.; Gary M. Soli, D.C., individually and dba Gary M. Soli, D.C., Inc., dba Chiropractic Health Services; Bret Steels, D.C.; Patrick J. Sullivan, D.C., individually and dba Patrick J. Sullivan, D.C., Inc., also dba Moanalua Chiropractic Center; Howard Tang, D.C., individually and dba Sports & Family Chiropractic Clinic; Gary Tanksley, D.C., individually and dba Tanksley Chiropractic Office, also dba Gary Tanksley, Inc.; Stephen A. Tarek, D.C.; Robert I. Toda, D.C.; Ross Trivas, D.C.; Frances Tully, D.C., individually and dba Chiropractic Health Care of Hawaii; Alfred R. Valenzuela, D.C.; Diana Walton, D.C. and Steven Walton, D.C., individually and dba Lahaina Health Center; Thomas Walton, D.C., individually and dba Leeward Chiropractic Center, Inc.; William K. Watanabe, D.C., individually and dba Ted S. Watanabe, Inc., also dba McCully Chiropractic Center; Rex Weigel, D.C.; Richard L. Wilcox. D.C., individually and dba Wilcox Health & Rehabilitation Center; Candace Williams, D.C.; Kenneth Williams, D.C., individually and dba Kenneth Williams, D.C., Inc., also dba Waimea Chiropractic Clinic; Dale K. Yamauchi, D.C., individually and dba Yamauchi Chiropractic, Inc.; Michael Young, D.C., individually and dba Young Health Clinic, Inc., also dba Health & Accident Clinic, Inc.; Raymond Yoza, D.C., individually and dba Yoza Chiropractic Office; Lois Campbell, D.C.; Malama Chiropractic Clinic; Joseph Morelli, D.C.; Michael J. Masters, D.C.; Lezlie Bignami, D.C.; and
Healthsouth, fka Pacific Rehabilitation & Sports Medicine ("PRSM"); Healthsouth, fka PRSM dba Eagle Rehab Corp., a Division of Horizon/CMS; Healthsouth, fka PRSM dba Maui Rehabilitation & Sports Medicine; Healthsouth, fka PRSM dba Kona Rehabilitation *933 & Sports Medicine; Healthsouth, fka PRSM dba Hilo Rehabilitation & Sports Medicine; Healthsouth, fka PRSM dba Maui Rehab; Healthsouth, fka PRSM dba Kona Rehab; Healthsouth, fka PRSM dba Hilo Rehab; Healthsouth, fka PRSM dba Pacific Rehab; Healthsouth, fka PRSM dba Pacific Rehab, Inc.; Healthsouth, fka PRSM dba Therapy Specialists, Inc.; Healthsouth, fka PRSM dba Central Oahu Rehabilitation; Healthsouth, fka PRSM dba Advance Rehabilitation & Sports Medicine, Inc.; Healthsouth, fka PRSM dba Leeward Back & Neck, Inc; Healthsouth dba Healthsouth Rehabilitation Center of Hawaii (Maui); Healthsouth dba Healthsouth Rehabilitation Center of Hawaii Satellite 1 (Maui); Healthsouth dba Healthsouth Rehabilitation Center of Hawaii Satellite 2 (Maui); Healthsouth dba Healthsouth Rehabilitation Center of Hawaii Satellite 3 (Maui); Healthsouth dba Healthsouth Rehabilitation Center of Kaimuki; Healthsouth dba Healthsouth Rehabilitation Center of Honolulu; Healthsouth dba Healthsouth Rehabilitation Center of Honolulu Satellite 1; Healthsouth dba Healthsouth Rehabilitation Center of Waipahu; Healthsouth dba Healthsouth Sports Medicine & Rehabilitation Center (Hilo); Healthsouth dba Healthsouth Sports Medicine & Rehabilitation Center Satellite 1 (Pahoa); Healthsouth dba Healthsouth Sports Medicine & Rehabilitation Center of Kona; Healthsouth dba Healthsouth Rehabilitation Center of Kauai; Healthsouth dba Kinesis Hawaii Inc.; Healthsouth dba Aloha Physical Therapy Inc.; The Independent Physical Therapy Network of Hawaii; Patients in Transition; Rainbow Rehabilitation Services Inc. dba Perch; Action Rehab, Inc.; Hawaii Ergonomic and Rehabilitation Clinic, Inc.; Hawaii Physical Therapy, Inc.; Island Rehab, Inc.; Mauka Physical Therapy; John Bason, P.T., individually and dba Kona Physical Therapy, Ltd.; Richard E. Blitzer, R.P.T.; Greg S. Collins, L.M.T.; Anthony DiFrancisco, L.M.T.; Charles Gardner, individually and dba Lahaina Acupuncture & Massage Center; Betty Lau, L.M.T., individually and dba Haloa; Ronald Y. Hanagami, P.T.; Scott Harvey, individually and dba Biofeedback Center of The Pacific, Inc.; Brian H. Hozaki, individually and dba Hozaki Physical Therapy; Jonathan B. Light, M.D., L.A.C.; Maitreyi R. Light, L.M.T.; K.T. Mellon, L.A.C., M.A.S.; Jennifer Nicklaw, L.M.T.; Neil Primack, P.T., individually and dba Integrative Physical Therapy; Lorita Whitney, individually and dba Witko, Inc. dba Hawaii Kai Therapeutic Center, also dba Holistic Center of the Pacific, Inc.; Victor M. Yamamoto, individually and dba Universal Massage; Kalihi Rehab Services, Inc.; Waianae Valley Physical Therapy, Inc.; Waipahu Physical Therapy, Inc.; Russell K. Yamada, P.T. dba Total Fitness Physical Therapy; Active Rehab; Acupuncture Associates of Oahu; Health Ventures, Inc.; Pacific Physical Therapy, Inc.; Allan Yamauchi, L.M.T.; Hawaiian Rehab Services, Inc.; Drew Yamamoto, L.M.T.; and
Workstar Occupational Health Systems, Inc.; Maui Occupational Healthcenter, Inc.; Kabba Anand, D.A.C.; Elly Huang, D.P.M.; Paula Lenny, M.D.; Jennifer Nicklaw, L.M.T.; Brett Snellgrove, R.P.T.; Plaintiffs-Appellants,
v.
HAWAIIAN INSURANCE & GUARANTY COMPANY, LTD.; First Insurance Company of Hawaii, Ltd.; Geico; Pacific Insurance Company, Ltd.; Dai-Tokyo Royal State Insurance Company, Ltd.; Progressive Adjusting Company, Inc.; Budget Rent-A-Car Systems, Inc.; Aig Hawaii Insurance Company, Inc.; United Services Automobile Association; Island Insurance Company, Ltd.; ADP Integrated Medical Solutions, Inc. fna Medical Billing Review Services, Inc.; Medcost, Inc.; Allstate Insurance Company; Alexis; Liberty Mutual Group; State Farm Insurance Company; Tig Insurance Company; Aetna Life & Casualty; Crawford & Company; Fireman's *934 Fund Insurance Company; Tokio Marine & Fire Insurance Company, Ltd.; Travelers Property Casualty; John Does 1-10; Jane Does 1-10; Doe Partnerships 1-10; Doe Corporations 1-10 and Doe Entities 1-10, Defendants-Appellees.
No. 24634.
Supreme Court of Hawaii.
December 7, 2005.
*935 Guy A. Sibilla, Honolulu, and Joseph L. Wildman (of Sibilla & Wildman), on the briefs, for plaintiffs-appellants.
Richard B. Miller (of Tom Petrus & Miller), on the briefs, Honolulu, for defendants-appellees Dai-Tokyo Royal State Ins. Co., Ltd., et al.
Jeffrey H.K. Sia, Steven L. Goto, and Gary S. Miyamoto (of Ayabe, Chong, Nishimoto, Sia & Nakamura), on the briefs, Honolulu, for defendants-appellees Pacific Ins. Co., Aetna Life & Casualty, and Travelers Property & Casualty.
Nancy Ryan, Honolulu, and Patrick K. Kelly (of The Pacific Law Group) on the briefs, for defendant-appellee Island Ins. Co., Ltd.
George W. Playdon, Jr., Honolulu, and Jeffrey K. Hester (of Reinwald, O'Connor & Playdon), on the briefs, for defendant-appellee Crawford & Company.
MOON, C.J., LEVINSON, JJ.; Circuit Judge WALDORF, in Place of NAKAYAMA, J., Recused; Intermediate Court of Appeals Associate Judge LIM, in place of ACOBA, J., Recused; and Circuit Judge HIRAI, in Place of DUFFY, J., Recused.
Opinion of the Court by MOON, C.J.
Plaintiffs-appellants, approximately 322 unaffiliated Hawai`i health care providers [hereinafter, collectively, the providers], bring this interlocutory appeal pursuant to Hawai`i Revised Statutes (HRS) § 641-1(b) (1993),[1] challenging the August 30, 2001 nonfinal appealable ruling of the Circuit Court of the First Circuit, the Honorable Virginia L. Crandall presiding, denying their motion for partial summary judgment and granting partial summary judgment in favor of defendants-appellees automobile insurers and adjusters [hereinafter, collectively, the insurers].[2]
On appeal, the providers argue that the circuit court erred in: (1) finding that the written notice of denial of benefits mandated by HRS § 431:10C-304(3)(B) (1993), quoted infra, [hereinafter, HRS § 431:10C-304(3)(B), Section (3)(B), or the subject statute] *936 is inapplicable to the subject billing disputes; (2) concluding that Hawai`i Administrative Rules (HAR) § 16-23-120 (1993), quoted infra, applies; and (3) retroactively applying the May 30, 2000 legislative amendments to the subject statute and the September 18, 2000 Insurance Commissioner's Order in GEICO v. Dep't of Commerce & Consumer Affairs (DCCA), INS-DR-2001-1.
For the reasons discussed herein, we vacate the circuit court's August 30, 2001 order denying the providers' motion for partial summary judgment and granting partial summary judgment in favor of the insurers and remand this case for further proceedings consistent with this opinion.

I. BACKGROUND

A. Factual Background

The facts of this case are uncontested. Between January 1, 1993 and December 31, 1999, each of the providers submitted bills to one or more of the insurers for non-emergency treatments rendered to thousands of personal injury protection (PIP) insureds allegedly injured in motor vehicle accidents. The insurers were obligated to pay appropriate PIP benefits under HRS chapter 431:10C on behalf of their insureds. For purposes of billing, the existing workers' compensation fee schedule was adopted as the payment fee schedule applicable to medical and rehabilitative services provided as no-fault benefits for persons injured in automobile accidents. HRS §§ 431:10C-308.5(a) and (b) (1993). Under section 431:10C-308.5(a), "the term `workers' compensation schedules' means the schedules adopted and ... establishing [the] fees and frequency of treatment guidelines." The workers' compensation schedule assigns a medical procedure code and a fee to each item of service rendered by health care providers. The providers, in preparing their bills for submission to the insurers, are required to follow the "fees and frequency of treatment guidelines" contained in the workers' compensation schedules. HRS § 431:10C-308.5(b). The insurers, however, rather than pay the bills as submitted, or deny the claim (in whole or in part), altered the treatment code because they believed that, "[b]ased on the available information, the services rendered appear to be best described by [a different medical treatment] code." The resulting effect of changing the treatment codes was a reduction in the payment for the service rendered, which the parties generally refer to as "down-coding."[3] The insurers, thus, (1) paid the bills pursuant to the adjusted treatment codes and (2) offered to negotiate with the providers as to the unpaid portions.

B. Procedural Background

On April 15, 1998, the providers filed a complaint against the insurers for the alleged underpayment for services rendered under their respective no-fault insurance contracts. Count I alleged that the insurers unlawfully down-coded, thereby reducing the amounts of the providers' bills without issuing denial letters, in violation of HRS § 431:10C-304(3)(B), or seeking peer review, as required by HRS § 431:10C-308.6 (1993).[4] *937 Count II alleged that the insurers breached their no-fault insurance contracts by failing or refusing to pay for services rendered.[5] The complaint sought declaratory and injunctive relief against down-coding of the providers' bills and damages for the underpaid amounts of the bills. The providers' complaint involves disputes regarding over 30,000 bills, approximately 10,000 of which have been produced in discovery.
In May 2000, Act 138 was signed into law, which amended HRS §§ 431:10C-304 and 431:10C-308.5 by, among other things, adding section 6 to HRS § 431:10C-304 and section (e) to HRS § 431:10C-308.5. Section 4 of the act stated that "[t]his Act shall take effect upon its approval." 2000 Haw. Sess. L. Act 138, § 4 at 271. The act was approved on May 30, 2000. Id. The new subparagraph (6) of HRS § 431:10C-304 (Supp.2004) states:
Disputes between the provider and the insurer over the amount of a charge or the correct fee or procedure code to be used under the workers' compensation supplemental medical fee schedule shall be governed by section 431:10C-308.5[.]
HRS § 431:10C-308.5(e) (Supp.2004) states:
In the event of a dispute between the provider and the insurer over the amount of a charge or the correct fee or procedure code to be used under the workers' compensation supplemental medical fee schedule, the insurer shall:
(1) Pay all undisputed charges within thirty days after the insurer has received reasonable proof of the fact and amount of benefits accrued and demand for payment thereof; and
(2) Negotiate in good faith with the provider on the disputed charges for a period up to sixty days after the insurer has received reasonable proof of the fact and amount of benefits accrued and demand for payment thereof.
If the provider and the insurer are unable to resolve the dispute, the provider, insurer, or claimant may submit the dispute to the commissioner, arbitration, or court of competent jurisdiction. The parties shall include documentation of the efforts of the insurer and the provider to reach a negotiated resolution of the dispute.
Thereafter, on January 10, 2001, the providers moved for summary judgment on Count I as to eleven bills, involving five providers and ten insurers, for services rendered between May 28, 1993 and August 5, 1998. The providers asserted that these bills were unlawfully reduced twenty to sixty percent by down-coding and without complying with certain statutory provisions. The providers specifically contended that: (1) the insurers' practice of "unilaterally chang[ing] the medical procedure codes or refus[ing] to pay the procedure codes, as submitted, to reduce the overall amount of the bill[,]" was "illegal[,]" because such practice is contrary *938 to the peer review procedure mandated by HRS § 431:10C-308.6; and (2) the insurers were in technical violation of Section (3)(B) for failure to provide written notices of their denials of all or part of a claim within the mandated period.
On February 2, 2001, the insurers filed cross-motions for partial summary judgment on Count I as to the eleven bills, arguing that the bills were lawfully adjusted and that the underpayments were negotiable. The insurers averred that, because they accepted all treatments rendered in connection with the eleven bills as reasonable, necessary, and appropriate, they were not obligated to issue a written denial pursuant to Section (3)(B) or seek peer review under HRS § 431:10C-308.6. The insurers sought a ruling, as a matter of law, that they utilized the correct billing dispute resolution mechanism when they paid the undisputed portion of the bills at issue and offered to negotiate the remaining balance in accordance with HAR § 16-23-120 and the 2000 amendment to HRS § 431:10C-308.5. In support of their position, the insurers relied upon (1) the Insurance Commissioner's Order in GEICO, issued on September 18, 2000, adopting the insurers' position in its entirety and (2) the May 30, 2000 legislative amendments to HRS §§ 431:10C-304 and 431:10C-308.5.
After a hearing on February 23, 2001 on both motions, the circuit court, in its minute order of August 3, 2001, denied the providers' motion for partial summary judgment and granted the insurers' cross-motion, essentially adopting the insurers' arguments, namely, that HRS §§ 431:10C-304 and 431:10C-308.6 are inapplicable to the facts of this case and that HAR § 16-23-120 applies. On August 30, 2001, the court entered it written ruling, wherein it found and concluded that
the bills at issue herein are billing disputes where the insurer has accepted the treatment as reasonable and appropriate and has paid the undisputed amount of the bill and are not bills for which the [insurers] were required to issue a formal denial or seek peer review of the billing disputes. Further, the Court finds that the "72-hour treatment" cases are inapposite to the instant matter. [HAR] Sec. 16-23-120 (1993) applies. The Court holds that the [insurers] utilized the correct bill[ing] dispute mechanism.[[6]]
In the meantime, the providers, on August 27, 2001, filed a motion for clarification of the circuit court's minute order. The motion sought to clarify that the court's order applied to only those billing disputes arising after January 1, 1998, the date the peer review statute was repealed. The court denied the motion on October 15, 2001.
Prior to the denial of their motion for clarification, the providers, on September 14, 2001, filed a motion for certification of the order granting the insurers' cross-motion for partial summary judgment and denying the providers' motion, pursuant to Hawai`i Rules of Civil Procedure (HRCP) Rule 54(b) (2000),[7] or, in the alternative, for leave to file interlocutory appeal.[8] After a hearing on *939 September 27, 2001, the circuit court filed its order, dated October 1, 2001, denying the providers' request for HRCP Rule 54(b) certification, but granting leave to file an interlocutory appeal, finding that,
under the specific circumstances of this case[,] a significant ruling has been issued on the bill[ing] dispute mechanism and that an interlocutory appeal will provide for a speedier termination of the litigation.
On October 18, 2001, the providers filed a timely notice of appeal.[9]

II. STANDARDS OF REVIEW

A. Summary Judgment

"We review the circuit court's grant or denial of summary judgment de novo." Yamagata v. State Farm Mut. Auto. Ins. Co., 107 Hawai`i 227, 229, 112 P.3d 713, 715 (2005) (citing Hawai`i Cmty. Fed. Credit Union v. Keka, 94 Hawai`i 213, 221, 11 P.3d 1, 9 (2000)). The standard for granting a motion for summary judgment is well established:
[S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion.
Querubin v. Thronas, 107 Hawai`i 48, 56, 109 P.3d 689, 697 (2005) (citations omitted) (brackets in original).

B. Statutory Interpretation

"Questions of statutory interpretation are questions of law to be reviewed de novo under the right/wrong standard." Guth v. Freeland, 96 Hawai`i 147, 149-50, 28 P.3d 982, 984-85 (2001) (citations omitted).

III. DISCUSSION

As previously stated, the providers, on appeal, advance three points of error regarding the circuit court's order denying their motion for partial summary judgment and granting the insurers' cross-motion, alleging that the circuit court erred in: (1) finding that the insurers were not required to issue formal written notices of denial for partial payment of medical bills pursuant to HRS § 431:10C-304(3)(B); (2) ruling that HAR § 16-23-120 applies to the subject billing disputes;[10] and (3) relying on the subsequent legislative amendments and the Insurance Commissioner's decision in GEICO for any medical bill submitted prior to May 30, 2000.

A. Applicability of HRS § 431:10-304(3)(B)

Preliminarily, we note that an insurer's obligation to pay no-fault benefits[11] is set *940 forth in HRS § 431:10C-304(3)(A), which provides that "[p]ayment of no-fault benefits shall be made within thirty days after the insurer has received reasonable proof of the fact and amount of benefits accrued, and demand for payment thereof." (Emphasis added.) In other words, an insurer shall pay no-fault benefits within thirty days of receipt of a provider's billing statement showing "the fact," i.e., the treatment services, and "the amount of benefits," i.e., the charges or cost of treatment services.
At the time the providers' claims arose, Section (3)(B) provided:
(B) Subject to section 431:10C-308.6, relating to peer review, if the insurer elects to deny a claim for benefits in whole or in part, the insurer shall within thirty days notify the claimant in writing of the denial and the reasons for the denial. The denial notice shall be prepared and mailed by the insurer in triplicate copies and be in a format approved by the commissioner. In the case of benefits for services specified in section 431:10C-103(10)(A)(i) and (ii) the insurer shall also mail a copy of the denial to the provider.
(Emphases added.) The providers maintain that the subject statute clearly sets forth the applicable procedure when an insurer wishes to deny "a claim for benefits," that is, treatment services and/or costs, "in whole or in part" and that any partial payment of medical bills constitutes a denial and triggers the insurer's obligation under the statute to provide written notice within thirty days. In response, the insurers assert that, where they have accepted the treatment rendered as reasonable and appropriate and the sole dispute concerns the appropriate charges for that treatment, such dispute is outside the scope of the subject statute. Thus, the dispositive issue on appeal is whether "a claim for benefits" under HRS § 431:10C-304(3)(B) encompasses treatment services and the costs attendant thereto such that a denial of services and/or costs, in whole or in part, triggers the notice requirement specified in the statute.
We begin our analysis by examining the plain language of the statute at issue. Zanakis-Pico v. Cutter Dodge, Inc., 98 Hawai`i 309, 316, 47 P.3d 1222, 1229 (2002). In so doing, "our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself." Yamagata, 107 Hawai`i at 229, 112 P.3d at 715 (citations omitted); see also Allstate Ins. Co. v. Schmidt, 104 Hawai`i 261, 265, 88 P.3d 196, 200 (2004) ("[W]here the language of the statute is plain and unambiguous, our only duty is to give effect to its plain and obvious meaning." (Citations omitted.) (Brackets in original.)).
As previously indicated, the insurers maintain that they were not obligated to provide notice because the sole dispute centered around the charges and not the treatment services. Section (3)(B), however, does not limit an insurer's obligation to provide notice only when the insurer elects to deny a claim for treatment services. In reading the first and second sentence of Section (3)(B), it is clear that "a claim for benefits" includes both treatment services and the charges attendant thereto. The first sentence of Section (3)(B) indicates that any denial of "a claim for benefits," either in whole or in part, requires the issuance of a denial notice to the claimant.[12] The second sentence states: "In the case of benefits for services ... the insurer shall also mail a copy of the denial to the provider." (Emphases added.) In other words, if an insurer elects to deny a claim for treatment services and/or cost, in whole or in part, it must notify the claimant; if the denial involves treatment services, the insurer  in addition to notifying the claimant  must also notify the provider of the denial. If we were to limit the phrase "claim for benefits" *941 as used in the first sentence of Section (3)(B) to treatment services only, as the insurers urge, the second sentence would be rendered superfluous. See In re City & County of Honolulu Corp. Counsel, 54 Haw. 356, 373, 507 P.2d 169, 178 (1973) (applying the "cardinal rule of statutory construction that a statute ought upon the whole be so constructed that, if it can be prevented, no clause, sentence or word shall be superfluous, void, or insignificant" (citations omitted) (emphases added)).
We further note that nowhere in HRS § 431:10C-304 does it authorize the insurers to down-code the billings. In fact, HRS § 431:10C-304(3)(C) specifically provides:
If the insurer cannot pay or deny the claim for benefits because additional information or loss documentation is needed, the insurer shall, within thirty days, forward to the claimant an itemized list of all the required documents. In the case of benefits for services specified in section 431:10C-103(A)(i) and (ii) [see supra note 13], the insurer shall also forward the list to the service provider.

(Emphases added.) Inasmuch as the insurers' down-coding was based on lack of sufficient information to support the declared treatment code, the insurers were required to forward to the claimant and the provider "an itemized list of all the required documents."
In light of the unambiguous mandatory language of HRS § 431:10C-304(3)(B), an insurer is required to provide written notice of its denial  in whole or in part  of the claim for benefits. Written notice to the claimant is required where the denial or partial denial relates to the treatment service and/or the charges therefor. Where the denial or partial denial involves treatment services, the insurer must also provide written notice to the provider. We, therefore, hold that the circuit court erred in ruling that "billing disputes where the insurer[s] ha[ve] accepted the treatment as reasonable and appropriate and ha[ve] paid the undisputed amount of the bill ... are not bills for which the [insurers] were required to issue a formal denial [in accordance with Section (3)(B).]"

B. Applicability of HAR § 16-23-120

The providers next contend that the circuit court erroneously concluded that HAR § 16-23-120 applies to the instant billing disputes. The insurers maintain that HAR § 16-23-120, which provides a billing dispute resolution mechanism, controls and that, therefore, the billing disputes at issue fall outside the purview of HRS § 431:10C-304(3)(B).
HAR § 16-23-120, entitled "Dispute Regarding Charges," adopted by the Insurance Commissioner in 1993, provides in pertinent part:
(a) In the event of a dispute between the provider and the insurer over the amount of a charge or the correct fee and procedure code to be used pursuant to Exhibit "A" to the workers' compensation schedules, the insurer shall pay all charges not in dispute and shall negotiate in good faith with the provider on the disputed charges. Such disputes shall not be filed with the commissioner for submission to peer review.

(b) If the provider and the insurer cannot resolve the dispute, either party may make a request to the commissioner for a hearing.
(Emphases added.) We recognize that the Insurance Commissioner has the authority to promulgate administrative rules pursuant to HRS § 431:10C-214 (1993)[13] and, most significantly, "to adopt administrative rules relating to fees or frequency of treatment" as permitted by HRS § 431:10C-308.5(b). We also recognize that an administrative agency's interpretation of its own rules "is normally accorded great weight." Coon v. City & County of Honolulu, 98 Hawai`i 233, 251, *942 47 P.3d 348, 366 (2002). However, "[i]t is axiomatic that an administrative rule cannot contradict or conflict with the statute it attempts to implement." Agsalud v. Blalack, 67 Haw. 588, 591, 699 P.2d 17, 19 (1985) (citations omitted). Pursuant to HRS § 91-7(b) (1993), this court "shall declare the [administrative] rule invalid if it finds that it violates ... statutory provisions, or exceeds the statutory authority of the agency, or was adopted without compliance with statutory rulemaking procedures." See also In re Water Use Permit Applications, 94 Hawai`i 97, 145, 9 P.3d 409, 457 (stating that "we have not hesitated to reject an incorrect or unreasonable statutory construction advanced by the agency entrusted with the statute's implementation"), reconsideration denied, as amended, 94 Hawai`i 97, 9 P.3d 409 (2000).
Under HAR § 16-23-120, disputes relating to "the amount of a charge or the correct fee and procedure code" need not "be filed with the [Insurance] Commissioner for submission to [p]eer [r]eview." Rather, it authorizes insurers to make partial payment of charges "not in dispute" and negotiate with the providers on "the disputed charges." The peer review exemption, however, clearly conflicts with the plain language of HRS § 431:10C-304(3)(B) that was in existence before the repeal of the peer review statute. Prior to the repeal, an insurer's denial of benefits, in whole or in part, was "[s]ubject to section 431:10C-308.6, relating to peer review." HRS § 431:10C-304(3)(B). Inasmuch as HAR § 16-23-120 exempts insurers from the peer review procedure for controversies relating to treatment services and/or the costs attendant thereto, we hold that HAR § 16-23-120 contravenes the express requirement of Section (3)(B) and is therefore void and unenforceable to this limited extent.
As a result of the January 1, 1998 repeal of the peer review statute, the legislature deleted the phrase "[s]ubject to section 431:10C-308.6, relating to peer review" from Section (3)(B) as part of the 2000 amendments to HRS § 431:10C-304. Thus, an insurer's denial or partial denial of a claim for benefits is no longer subject to peer review.[14] Accordingly, HAR § 16-23-120 does not conflict with the plain language of the subject statute as of the repeal date of the peer review statute. However, we emphasize that nothing in HAR § 16-23-120(1) relieves the insurers of their obligation to provide the written notice required by HRS § 431:10C-304(3)(B) when the insurer wishes to challenge, in whole or in part, a bill for medical treatment or (2) authorizes the insurers' practice of down-coding. Accordingly, to the extent that HAR § 16-23-120 is consistent with the subject statute after January 1, 1998, we hold that the insurers remain obligated to provide formal denial notices of a claim for benefits in accordance with Section (3)(B).

C. Retroactivity of the 2000 Amendments and GEICO v. DCCA

The providers argue that, in concluding that HAR § 16-23-120 applies, the circuit court erred in retrospectively applying (1) the subsequent legislative amendments to HRS §§ 431:10C-304 and 431:10C-308.5 as well as (2) the Insurance Commissioner's Order in GEICO issued on September 18, 2000. In support of their contention, they point to the August 30, 2001 order. The order, however, made no reference to the amendments or the GEICO decision, and it is unclear from the record whether the circuit court relied, if at all, upon them. Because the providers did not direct us to anywhere else in the record that demonstrates the circuit court retroactively applied the amendments or the decision, we believe they have failed to meet their burden of showing that the circuit court erred. Ala Moana Boat Owners' Ass'n v. State, 50 Haw. 156, 159, 434 P.2d 516, 518, reh'g denied, 50 Haw. 181, 434 P.2d 516 (1967); see also In re Estate of Lee Chuck, 33 *943 Haw. 445, 451-52 (1935) ("[There is] a general presumption ... in all legal proceedings that judicial tribunals ... act according to law. On appeal ... from the decision of an inferior judicial tribunal an appellate court will presume in review that it has complied with all the requirements of law and that its determination rested on facts sufficient to sustain them." (Citations omitted.)).

IV. CONCLUSION

In light of the foregoing, we vacate the First Circuit Court's August 30, 2001 order denying the providers' motion for partial summary judgment and granting partial summary judgment in favor of the insurers, and remand this case to the circuit court for further proceedings consistent with this opinion.
NOTES
[1] HRS § 641-1(b) provides, in relevant part, as follows:

Upon application made within the time provided by the rules of court, an appeal in a civil matter may be allowed by a circuit court in its discretion ... from any interlocutory judgment, order, or decree whenever the circuit court may think the same advisable for the speedy termination of litigation before it.
[2] Initially, Dai-Tokyo Royal State Insurance Company, Ltd.; First Insurance Company of Hawaii, Ltd.; Government Employees Insurance, Co. (GEICO); Progressive Adjusting Company, Inc.; Budget Rent-A-Car Systems, Inc.; AIG Hawaii Insurance Company, Inc.; Island Insurance Company, Ltd.; Liberty Mutual Group; State Farm Insurance Company; TIG Insurance Company; Fireman's Fund Insurance Company; and Tokio Marine and Fire Insurance Company, Ltd. [hereinafter, collectively, the Dai-Toyko insurers] were the only insurers to jointly file the cross-motion for summary judgment. On February 9, 2001, Hawaiian Insurance and Guaranty Company, Ltd. filed its motion to join the Dai-Tokyo insurers' cross-motion for summary judgement. On February 13, 2001, Pacific Insurance Company, Ltd. filed its joinder motion and on February 21, 2001, Crawford & Company filed the same.

On appeal, the Dai-Toyko insurers filed their answering brief, which Crawford and Company joined. Pacific Insurance Company, Aetna Life & Casualty, and Travelers Property Casualty filed a separate answering brief. This court need not address the arguments presented in that brief because the providers, on November 18, 2002, filed a stipulation for partial dismissal of their appeal against these three insurers. It should further be noted that Island Insurance filed its own answering brief after it substituted The Pacific Law Group as counsel, essentially adopting and incorporating by reference the arguments set forth by the Dai-Tokyo insurers.
Although not relevant to this appeal, other named defendants in this case include Hawaiian Insurance and Guaranty Co., Ltd.; Allstate Insurance Co.; Alexis; John Does 1-10; Jane Does 1-10; Doe Partnerships 1-10; Doe Corporations 1-10; and Doe Entities 1-10. The procedural history of this case shows that the providers stipulated to the dismissal of ADP Integrated Medical Solutions, Inc. fka Medical Billing Review Services, Inc., and Medcost, Inc. on May 10, 2000, United Services Automobile Association on December 29, 2000, and Acclamation Insurance Management Services on August 3, 2001.
[3] A description of "down-coding" can be found in several affidavits that were attached to the summary judgment motions and basically explain the same procedure. For example, the affidavit of Darcy Tavares, a professional coder certified by the American of Academy of Professional Coders and a licensed independent bill reviewer, describes several instances where a provider listed a medical treatment code and its attendant cost on the billing statement, and her reasons for down-coding. In one of those instances, a charge was submitted by the provider for an initial office visit, with code 99203 and the corresponding fee of $76.37. Tavares notes that code 99203 requires the provider to meet "three components of substantiating the claim by the submission of-(i) history, (ii) physical examination information, and (iii) medical decision making[.]" The provider, however, submitted only a "checked-off" list that these three items were done, without the proper documentation. Because the provider failed to meet the three submission requirements for code 99203, she changed the code to 99202, which, in her view, more appropriately conformed to the documentation submitted. As a result, the provider was paid the applicable fee for code 99202, i.e., $55.40. Tavares' affidavit explains other down-coding instances that basically amount to matching the documentation provided with what was deemed to be the appropriate treatment code.
[4] On June 19, 1997, HRS § 431:10C-308.6 was repealed by Act 251. 1997 Haw. Sess. L., Act 251 § 50 at 551. The repeal went into effect on January 1, 1998. Id. at 553. However, at the relevant times herein, HRS § 431:10C-308.6 provided in relevant part:

(a) ... If an insurer desires to challenge treatment and rehabilitative services in excess of the fee schedules or treatment guidelines, the insurer may do so by filing, within five working days of a request made pursuant to subsection (d), a challenge with the commissioner for submission to a peer review organization....
. . . .
(g) If the insurer challenges a bill for medical treatment or rehabilitative services within thirty days of receipt, the insurer need not pay the provider for the disputed portion of the bill subject to the challenge until a determination has been made by the peer review organization.
(h) If a peer review organization determines that treatment or rehabilitative services were appropriate and reasonable, the insurer shall pay to the provider the outstanding amount plus interest at a rate of one and one-half percent per month on any amount withheld by the insurer pending the peer review.
[5] The complaint originally contained five counts. Counts I, II, and III allege that the insurers arbitrarily, unlawfully or illegally "down coded" the bills submitted by the providers so that coverage for the services provided would be less; Count IV alleges that the insurers' action "constitutes an unfair claim settlement practice," in violation of HRS § 431:13-103(a)(10); and Count V alleges a cause of action for unfair and/or deceptive acts and/or practices, in violation of HRS § 480-2. In their second amended complaint, the providers added Counts VI and VII, alleging claims of violations of HRS §§ 431:10C-101, et seq., 431:10C-304, and 431:10C-308. The complaint, however, was finally amended to contain only Counts I and II.
[6] Although the minute order stated that Judge Crandall granted partial summary judgment as to the joinders to the Dai-Tokyo insurers' cross-motion, the formal order only expressly reflects the grant of partial summary judgment in favor of the Dai-Tokyo insurers.
[7] HRCP Rule 54(b) provides, in pertinent part, as follows:

(b) Judgment upon multiple claims or involving multiple parties. When more than one claim for relief is presented in an action ... the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only ... upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.
(Emphasis in original.)
[8] This court has indicated that:

As a general matter, an appellate court's jurisdiction is limited to a review of final judgments, orders and decrees. A judgment is final when all claims of the parties to the case have been terminated. Absent the entry of final judgment as to all claims, an appeal may generally be taken from a nonfinal order or decree if (1) leave to take an interlocutory appeal has been granted by the circuit court pursuant to HRS § 641-1(b); (2) the order or decree has been certified as final for appeal purposes pursuant to [HRCP] Rule 54(b)[.]
Fought & Co., Inc. v. Steel Eng'g & Erection, Inc., 87 Hawai`i 37, 49, 951 P.2d 487, 499 (1998) (citing Wong v. Takeuchi, 83 Hawai`i 94, 98-99, 924 P.2d 588, 592-93 (App.1996)) (some brackets added) (some brackets in original).
[9] An order extending the time for appeal was entered September 25, 2001, extending the time for appeal from September 29, 2001 to October 29, 2001 because the motion for interlocutory appeal had been calendared for hearing on October 22, 2001.
[10] Because the providers, on appeal, do not claim error in the circuit court's conclusion that the insurers' dispute over fees and procedure codes is not subject to the (now repealed) peer review statute, HRS § 431:10C-308.6, the providers have waived this argument for purposes of this appeal. See Ling v. Yokoyama, 91 Hawai`i 131, 135, 980 P.2d 1005, 1009 (App.1999) (citing Loui v. Bd. of Med. Examiners, 78 Hawai`i 21, 29 n. 19, 889 P.2d 705, 713 n. 19 (1995)).
[11] "No-fault benefits" are defined in HRS § 431:10C-103(10)(A) and states in relevant part:

(A) No-fault benefits, sometimes referred to as personal injury protection benefits, with respect to any accidental harm means:
(i) All appropriate and reasonable expenses necessarily incurred for medical, hospital, surgical, professional, nursing, dental, optometric, ambulance, prosthetic services, products and accommodations furnished, and x-ray....
(ii) All appropriate and reasonable expenses necessarily incurred for psychiatric, physical, and occupational therapy and rehabilitation[.]
(Emphases added.)
[12] Under HRS § 431:10C-304(3)(B), denial notices of a claim for benefits are made to the claimant and not the providers, as they suggest. Nonetheless, it is undisputed that the insurers did not provide notices to either the claimants or the providers.
[13] HRS § 431:10C-214 provides in pertinent part:

In order to carry out the provisions and fulfill the purpose of this article, the commissioner shall:
. . . .
(2) Adopt, amend and repeal such rules, pursuant to chapter 91, as the commissioner deems necessary to carrying out and fulfilling the purposes of this article, and to establishing standards for the prompt, fair and equitable disposition of all claims arising out of motor vehicle accidents[.]
[14] We note that HRS § 431:10C-212 (1993) provides a remedy for a denial of benefits, stating that:

(a) If a claimant or provider of services objects to the denial of benefits by an insurer or self-insurer pursuant to section 431:10C-304(3)(B) and desires an administrative hearing thereupon, the claimant or provider of services shall file with the commissioner, within sixty days after the date of denial of the claim, ... (2) a written request for review[.]
Further, HRS § 431:10C-213 (1993) permits the submission of "any dispute relating to a no-fault policy to an arbitrator by filing written request with the clerk of the circuit court in the circuit where the accident occurred."