184 P.3d 792

Emerson M.F. JOU, M.D.,
Provider–Appellant,

v.

J.P. SCHMIDT, Insurance Commissioner, Department of Commerce and Consumer Affairs, State of Hawaii, Appellee–Appellee,

and

Island Insurance Company, Ltd.,
Respondent–Appellee.

No. 27369.

Intermediate Court of Appeals of Hawai'i.

April 29, 2008.

As Corrected April 30, 2008.

Stephen M. Shaw, on the briefs, for Provider–Appellant.

Mark J. Bennett, Attorney General of Hawai'i, David A. Webber, Deborah Day Emerson, Deputy Attorneys General, on the briefs, for Appellee–Appellee.

Michael N. Tanoue, Patrick K. Kelly, Jeffrey S. Masatsugu (The Pacific Law Group), for Respondent-Appellee.

FOLEY, Presiding Judge, FUJISE, and LEONARD, JJ.

Opinion of the Court by LEONARD, J.

In this secondary appeal, Provider–Appellant Emerson M.F. Jou, M.D. (**Jou**) appeals

from the Judgment filed in the Circuit Court of the First Circuit (**Circuit Court**) on May 23, 2005 (**Judgment**).[1] The Circuit Court ruled in favor of Insurance Commissioner J.P. Schmidt (**Commissioner Schmidt**), Department of Commerce and Consumer Affairs of the State of Hawai'i (**DCCA**), and Island Insurance Company, Ltd. (**Island**), affirming Commissioner Schmidt's Final Order Following Remand, which was filed on May 26, 2004. Jou filed a timely notice of appeal on June 21, 2005.

On appeal, Jou argues, *inter alia*, that the Circuit Court erred in: (1) denying his request that the presiding judge be disqualified based on the composition of the Hawai'i Judicial Selection Commission (**JSC**), which included an Island employee; (2) finding that the written notice of denial of benefits mandated by Hawaii Revised Statutes (**HRS**) § 431:10C–304(3)(B) is inapplicable to billing disputes, as opposed to treatment disputes; and (3) finding that the payment of interest mandated by HRS § 431:10C–304(4) is inapplicable when a payment is delayed in conjunction with a billing dispute. For the reasons discussed herein, we hold: (1) Jou failed to submit a disqualifying affidavit satisfying the statutory requirements of HRS § 601–7 and, in light of the rules governing the conduct of the JSC, there is no appearance of impropriety requiring the disqualification of the presiding judge in this case; (2) notice of denial was required; and (3) interest was due to Jou in this case.

## BACKGROUND

On March 26, 1996, Evelyn Dereas (**Dereas**) suffered injuries in an automobile accident. Jou treated Dereas and subsequently billed Island for treatment rendered between April 24, 1996, and January 29, 1998. Island paid some claims, denied certain claims, "down-coded" several of Jou's claims,[2] and requested additional information from Jou regarding two of his billing statements. Island claimed that the information was necessary in order to determine the propriety of

1. The Honorable Sabrina S. McKenna presided.

2. Down-coding describes a practice whereby insurers unilaterally change submitted claims to

lower-valued codes. *Orthopedic Assoc. of Hawaii, Inc. v. Haw'n Ins. & Guar. Co., Ltd.*, 109 Hawai'i 185, 191, 124 P.3d 930, 936 (2005).

the amount and the coding of the charges in Jou's bills. At some point Jou responded to the information requests, although the record is unclear as to when, and there appeared to be a series of communications between Jou and Island on these and other bills. On April 20, 1998, for example, Jou sent to Island an "Analysis of Unpaid Bills," wherein he itemized the procedures and supplies denied or reduced by Island, and claimed a total unpaid balance due, excluding taxes, of $1,371.76.

On December 1, 1998, Jou requested an administrative hearing before the Insurance Division of the DCCA. Jou claimed, *inter alia,* that Island had improperly failed to issue a notice of denial of his bills and to pay him $697.05 in interest. Island paid in full Jou's bills in the amount of $1,371.76 on May 25, 1999, without interest.

On July 12, 2002, Jou moved in the agency proceeding for summary judgment against Island. He argued, *inter alia,* that: (1) Island failed to act on Jou's demands for payment within an applicable thirty-day deadline as mandated under HRS § 431:10C–304(3); (2) any denial of Jou's claims after the thirty-day deadline were void; and (3) Jou was entitled to the payment of interest in the amount of $697.05. Island filed a cross-motion for summary judgment against Jou on August 2, 2002, arguing: (1) Island was not required to issue a denial notice because the disputed claims did not involve a challenge to the reasonableness or appropriateness of the care rendered; (2) Jou was not entitled to interest on the balance withheld by Island while Island sought additional information from him; and, (3) Jou failed to comply with Island's requests for additional information. The motions were heard on August 20, 2002.

On September 17, 2002, the Hearings Officer made the following Findings of Fact (**FOFs**):

1. On March 26, 1996, Evelyn Dereas ("Dereas") was involved in a motor vehicle accident.

2. As a result of injuries sustained in the motor vehicle accident, Respondent made payments of no-fault benefits to and on behalf of Dereas, including payments to Provider.

3. In response to various bills [fn 2] received from Provider for treatment rendered to Dereas, Respondent requested additional information and documentation from Provider to determine whether he had charged the correct amounts and had applied the appropriate CPT codes.

4. On or about May 25, 1999, Respondent made a payment of no-fault benefits to Provider for services provided to Dereas between April 24, 1996 and January 29, 1998 [fn 3]. The payment totaled $1,371.76.

[fn 2]    The record presented here did not include the specific bills in question.

[fn 3]    There was very little in the record to determine when the requested information was provided to Respondent.

The Hearings Officer also made Conclusions of Law (**COLs**), including:

[1.]    There is no dispute here that the benefits in question were not denied as being inappropriate, unreasonable, or unnecessary; rather Respondent disputed the amount of the various charges and the procedure codes used. As such, the Hearings Officer concludes that Respondent was not required to issue a formal denial of no-fault benefits pursuant to the provisions of Hawaii Revised Statutes ("HRS") § 431:10C–304(3)(B).

[2.]    As to Respondent's Cross–Motion for Summary Judgment, Provider does not point to and the Hearings Officer cannot find any authority allowing for the payment of interest allegedly accruing to Provider while Respondent disputed Provider's application of the CPT codes [fn 4]. The Hearings Officer therefore concludes that Provider is not entitled to the claimed interest under the circumstances of this case.

[fn 4]    There has been no showing that the requests for additional information were inappropriate or otherwise improper.

Based on these findings and conclusions, the Hearings Officer recommended denial of

Jou's motion for summary judgment and the granting of Island's motion for summary judgment. On November 29, 2002, Insurance Commissioner Wayne Metcalf (**Commissioner Metcalf**) issued an order remanding the case for further proceedings, concluding that the issue in dispute was whether Jou was entitled to interest under HRS § 431:10C–304(4). Commissioner Metcalf's order further stated: "[T]he real issue is whether the insurer had received reasonable proof of the fact and amount of benefits accrued, and demand for payment thereof, and if so, when did the insurer receive such reasonable proof[.]"

On December 12, 2002, Island filed a motion for reconsideration, arguing that HRS § 431:10C–304(4) does not apply to billing disputes, and to the extent that it does apply, Jou did not provide "reasonable proof" of the fact and amount of benefits accrued.

On March 24, 2004, Commissioner Schmidt granted Island's motion for reconsideration and ordered the case remanded for further proceedings and the issuance of a recommended order consistent with the Commissioner's Final Order issued in *Jou (Puaoi) v. First Ins. Co.; MVI–2002–6–P (Puaoi )*.[3]

On April 27, 2004, the Hearings Officer made a Recommended Order Upon Remand to adopt the September 17, 2002, Hearing Officer's Findings of Fact, Conclusions of Law, and Recommended Order Denying Provider's Motion for Summary Judgment and Granting Respondent's Cross–Motion for Summary Judgment, concluding that the recommended order was consistent with the Commissioner's Final Order in *Puaoi*.

On May 26, 2004, Commissioner Schmidt entered a Final Order Following Remand, adopting the Hearing Officer's Findings of Fact, Conclusions of Law, and Recommended Order, denied Jou's motion for summary judgment, and granted Island's motion for summary judgment.

On June 25, 2004, Jou appealed from the Commissioner's Final Order to the Circuit

Court. Jou asserted that he was entitled to interest on Island's unpaid balance pursuant to HRS § 431:10C–304(4), and that affirming Commissioner Schmidt's order would result in various constitutional violations. Prior to the hearing on the matter, Jou sought to disqualify the presiding Circuit Court judge, Sabrina S. McKenna, by filing a Declaration of Stephen M. Shaw, his counsel, pursuant to HRS § 601–7.

At a hearing on January 24, 2005, Judge McKenna orally denied Jou's request for disqualification. On February 17, 2005, the Circuit Court entered an Order Affirming Commissioner Schmidt's Final Order Following Remand (**Order**). The Court held that Jou "has not met the burden of establishing that any finding of fact was clearly erroneous, and has not established the existence of any ground provided by HRS § 91–14(g) as a basis for remand, reversal, or modification of the Commissioner's Final Order." Judgment was entered on May 23, 2005.

## POINTS ON APPEAL

On appeal, Jou argues that the Circuit Court:

(1) erred in denying his request for disqualification of Judge McKenna;

(2) erred in finding that Island was not required to issue a notice of denial after it made reduced and partial payments on his claims;

(3) erred in finding that Jou was not entitled to interest on the balance withheld by Island thirty days after he submitted billing statements and demand for payment;

(4) erred in affirming the September 17, 2002, Hearings Officer's Findings of Fact, Conclusions of Law and Recommended Order;

(5) violated Jou's due process and equal protection rights by upholding Commissioner Schmidt's Final Order;

---

3. In *Puaoi*, Commissioner Schmidt held that an insurer's payment of less than 100% of provider's demand is notice to provider that the insurer has made a determination to deny the unpaid portion of the claim. As discussed, *infra*, this position was rejected by the Hawai'i Supreme Court in *Orthopedic Assoc. of Hawaii, Inc. v. Haw'n Ins. & Guar. Co., Ltd.*, 109 Hawai'i 185, 191, 124 P.3d 930, 936 (2005).

(6) made a "regulatory taking" of Jou's interest on the balances due to him in violation of the Fifth and Fourteenth Amendments to the United States Constitution;

(7) violated Jou's rights under the petition clause of the First Amendment to the United States Constitution by ruling in favor of the DCCA on Jou's interest claims;

(8) deprived Jou of a property right on the interest owed to him, in violation of the due process and equal protection clauses of the Hawai'i and United States Constitutions; and

(9) violated the Hawai'i Constitution by interfering with the promotion of public health.

Regarding Jou's points of error, we conclude that: (1) Judge McKenna did not abuse her discretion in refusing to disqualify herself; (2) Island was required to issue a denial notice pursuant to HRS § 431:10C–304(3)(B); (3) Jou was entitled to interest on the balance withheld by Island; and (4) Jou's constitutional claims are without merit.

## STANDARDS OF REVIEW

The Hawai'i Supreme Court "has adopted the abuse of discretion standard for reviewing a judge's denial of a motion for recusal or disqualification." *State v. Ortiz*, 91 Hawai'i 181, 188, 981 P.2d 1127, 1134 (1999) (citations omitted).

■ Review of the Circuit Court's Order and Judgment is a secondary appeal. We must determine whether the Circuit Court was right or wrong in its decision, utilizing the same standards set forth in HRS § 91–14(g) as applied by the Circuit Court on our review of the agency's decision. The courts may freely review an agency's conclusions of law. Questions of fact are reviewed under the "clearly erroneous" standard. *See, e.g., Hawaii Teamsters & Allied Workers, Local 996 v. Dep't of Labor & Indus. Relations*, 110 Hawai'i 259, 265, 132 P.3d 368, 374 (2006). A finding of fact or a mixed determination of law and fact is clearly erroneous when (1) the record lacks substantial evidence to support the finding or determination, or (2) despite substantial evidence to support the finding or determination, the appellate court is left with the definite and firm conviction that a mis-

take has been made. Substantial evidence is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion. *Del Monte Fresh Produce (Hawaii), Inc. v. Int'l Longshore & Warehouse Union, Local 142, AFL–CIO*, 112 Hawai'i 489, 499, 146 P.3d 1066, 1076 (2006).

Questions of statutory interpretation are questions of law, which are reviewed de novo under the right/wrong standard. *See, e.g., Lingle v. Hawai'i Gov't Employees Ass'n, AFSCME, Local 152*, 107 Hawai'i 178, 183, 111 P.3d 587, 592 (2005).

■ We review questions of constitutional law under the right/wrong standard. *County of Kaua'i v. Baptiste*, 115 Hawai'i 15, 25, 165 P.3d 916, 926 (2007).

## DISCUSSION

### (1) Request for Disqualification

Jou argues that Judge McKenna's refusal to disqualify herself constituted a violation of HRS § 601–7 and his right to equal protection and due process as guaranteed by the Fourteenth Amendment to the United States Constitution. In support of his request to disqualify Judge McKenna, Jou submitted the declaration of his counsel, Stephen M. Shaw, and an article from the Honolulu Star Bulletin. The declaration of Stephen Shaw stated:

> I, Stephen M. Shaw, attorney for Plaintiff have personal knowledge of the following matters and that I, Declarant, am competent to testify thereto. This declaration is made because Island Insurance Company has one seat on the nine-member Judicial Selection Commission, and the insurance industry has attorneys whose firms represent industry members taking up at least two more positions.

> Further, there is no indication that the rules or the constitution will be modified to prevent the insurance industry, including Island Insurance Company, from voting whether or not to retain the judge hearing this matter, or any other insurance case.

A true and correct copy of a recent news media report on the commission is attached as Exhibit "A".[4]

When Jou's motion was filed, HRS § 601–7 (Supp.2005) provided:

**Disqualification of judge; relationship, pecuniary interest, previous judgment, bias or prejudice.**

(a) No person shall sit as a judge in any case in which:

(1) The judge's relative by affinity or consanguinity within the third degree is counsel, or interested either as a plaintiff or defendant, or in the issue of which the judge has, either directly or through such relative, a more than de minimis pecuniary interest; or

(2) The judge has been of counsel or on an appeal from any decision or judgment rendered by the judge; provided that no interests held by mutual or common funds, the investment or divestment of which are not subject to the direction of the judge, shall be considered pecuniary interests for purposes of this section; and after full disclosure on the record, parties may waive disqualification due to any pecuniary interest.

(b) Whenever a party to any suit, action, or proceeding, civil or criminal, makes and files an affidavit that the judge before whom the action or proceeding is to be tried or heard has a personal bias or prejudice either against the party or in favor of any opposite party to the suit, the judge shall be disqualified from proceeding therein. Every such affidavit shall state the facts and the reasons for the belief that bias or prejudice exists and shall be filed before the trial or hearing of the action or proceeding, or good cause shall be shown for the failure to file it within such time. No party shall be entitled in any case to file more than one affidavit; and no affidavit shall be filed unless accompanied by a certificate of counsel of record that the affida-vit is made in good faith. Any judge may disqualify oneself by filing with the clerk of the court of which the judge is a judge a certificate that the judge deems oneself unable for any reason to preside with absolute impartiality in the pending suit or action.

■ The statute requires a moving party to timely file an affidavit "stat[ing] the facts and reasons for the belief that bias or prejudice exists." *State v. Ross,* 89 Hawai'i 371, 377, 974 P.2d 11, 17 (1999). Specifically, the facts set forth in the affidavit must be sufficient for a "sane and reasonable mind" to "fairly infer bias or prejudice." *Glover v. Fong,* 39 Haw. 308, 314–15, 1952 WL 7353 (1952).

■ Statutory provisions requiring disqualification have been strictly construed. Courts have uniformly held that an affidavit filed by counsel does not satisfy the statutory requirement for the party seeking disqualification to attest to the disqualifying facts. *See, e.g., Giebe v. Pence,* 431 F.2d 942 (9th Cir.1970). In *Giebe,* the court analyzed 28 U.S.C. § 144, a disqualification statute substantially similar to HRS § 601–7, which begins with the words: "Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit …" *Id.* at 943. The court held that the explicit language of § 144 requires a *party* to make and file the affidavit, and rejected plaintiff's contention that an affidavit made by a party's counsel of record constitutes substantial compliance with the statute. *Id.* Numerous other decisions are in accord. *See also, e.g., U.S. ex rel. Wilson v. Coughlin,* 472 F.2d 100, 104 (7th Cir.1973); *Universal City Studios, Inc. v. Reimerdes,* 104 F.Supp.2d 334, 348 (S.D.N.Y.2000); *Paschall v. Mayone,* 454 F.Supp. 1289, 1300 (S.D.N.Y.1978); *Martelli v. City of Sonoma,* 359 F.Supp. 397, 399 (N.D.Cal.1973).

■ Moreover, even assuming Jou had complied with the statutory requirements, Shaw's declaration failed to sufficiently state

---

4. The May 30, 2004 clipping from the Honolulu Star Bulletin was entitled "Rejected judges remain in the dark. The judicial retention process in Hawaii favors confidentiality over accountabil-ity." The article discussed the judicial retention process and listed members of the JSC, including Island's Assistant Vice President, Lois Suzawa.

facts showing bias or prejudice on the part of Judge McKenna. Although the declaration here stated that Island had a seat on JSC, the declaration failed to include any specific facts regarding Judge McKenna's retention or petition for retention. Therefore, the sweeping inference that Judge McKenna is, *ipso facto*, biased or prejudiced by "Island's seat" on the JSC is speculative at best. Accordingly, we find that Jou failed to demonstrate bias or prejudice pursuant to HRS § 601-7.

■ Regardless of whether actual bias is shown under HRS § 601-7, the Hawai'i Supreme Court has held that due process requires judicial disqualification where the circumstances "fairly give rise to an appearance of impropriety and ... reasonably cast suspicion on [the judge's] impartiality." *State v. Brown,* 70 Haw. 459, 467 n. 3, 776 P.2d 1182, 1188 n. 3 (1989); *State v. Ross,* 89 Hawai'i 371, 377, 974 P.2d 11, 17 (1999). In other words, "the 'appearance of impropriety' may still require recusal even absent bias in fact." *Ross,* 89 Hawai'i at 380, 974 P.2d at 20.

■ The Code of Judicial Conduct (1992) (CJC) offers additional rules for the conduct of judges. Canon 2 of the CJC provides: "A Judge Shall Avoid Impropriety and the Appearance of Impropriety in all of the Judge's Activities." The commentary to CJC Canon 2(A) further states that, "the test for appearance of impropriety is whether the conduct would create in reasonable minds a perception that the judge's ability to carry out judicial responsibilities with integrity, impartiality and competence is impaired." *See also Ross,* 89 Hawai'i at 380, 974 P.2d at 20 ("The test for disqualification due to the 'appearance of impropriety' is an objective one, based not on the beliefs of the petitioner or the judge, but on the assessment of a reasonable impartial onlooker apprised of all the facts.").

As to disqualification, Canon 3(E) of the CJC states in relevant part:

**DISQUALIFICATION.** (1) A judge shall disqualify himself or herself in a proceed-

ing in which the judge's impartiality might reasonably be questioned, including but not limited to instances where:

(a) the judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of disputed evidentiary facts concerning the proceeding;

(b) the judge served as a lawyer in the matter in controversy, or a lawyer with whom the judge previously practiced law served during such association as a lawyer concerning the matter, or the judge has been a material witness concerning it;

(c) the judge knows the he or she, individually or as a fiduciary, or the judge's spouse, parent or child wherever residing, or any other member of the judge's family residing in the judge's household, has an economic interest in the subject matter in controversy or in a party to the proceeding or has any other more than de minimis interest that could be substantially affected by the proceeding.

At a hearing on January 24, 2005, Jou argued the disqualification of Judge McKenna was necessary due to "an appearance of impropriety" based on the composition of the JSC, from whom Judge McKenna would seek retention.[5] Jou pointed to three members of the JSC in particular:

Lois Sazawa [sic], who's a vice president of one of the parties here, Island Insurance. The other significant insurance representative is the chair of the commission, which is Sidney Ayabe, whose firm does lots and lots of insurance defense work in town. And the third is Rosemary Fazio, whose firm represents HMSA, as well as is counsel to the Board of Directors of HMSA.

Jou further stated:

It makes no sense for the Judicial Selection Committee to be composed of—of Island Insurance's vice president while Island Insurance has cases like this one pending in this court, and while Your Honor is on a ten-year term, and because Your Honor will no likely seek retention, this is

---

5. As Judge McKenna's current term is from June 30, 2005, through June 29, 2015, her petition for retention was necessarily pending at the time Jou

filed his motion to disqualify on January 21, 2005. *See* Hawai'i Const. Art. VI, § 3.

objectively speaking not actual bias, but casts a grave appearance of impropriety on our system.

At the hearing, Judge McKenna confirmed it was her time to petition for retention, and acknowledged her awareness that Lois Suzawa was a member of the JSC:

> In terms of Ms. Sazawa [sic] apparently being employed by Island, I'm not sure at what point I became aware of that. I'm not sure if it wasn't because of what-what's been submitted by you in this or another case. I think you raised this in another case.

. . .

> I also do not believe that this situation creates an appearance of impropriety type of situation that you allude to here. **And as a practical matter, it happens to be that it is my time for a retention—or petition for retention,** but there are many other judges that are—you know, may be at—from time to time applying for retention and/or applying to other courts or whatever. And based on the reasons that you have stated, I see no reason for any judge in this jurisdiction to recuse himself or herself based on the issues that you have raised, and so therefore I would decline recusal in this case.

(Emphasis added.)

In considering whether these facts could create an appearance of impropriety and could cause a reasonable observer apprised of all the facts to doubt Judge McKenna's impartiality, we also consider the rules applicable to the conduct of the JSC members. Rule 5 of the Rules of the Judicial Selection Commission (1995) (**JSC Rules**) provides, in relevant part:

### SECTION ONE: ABUSE OF POSITION

A. No commissioner shall use or attempt to use his or her official position to secure privileges or exemptions for the commissioner or others.

. . .

### SECTION THREE: CONFLICT OF INTEREST

A. Every commissioner shall avoid conflicts of interest, in the performance of commission duties. Every commissioner is required to exercise diligence in becoming aware of conflicts of interest, and disclosing any conflicts to the Judicial Selection Commission. If a commissioner knows of any personal, business, or legal relationship as a party or attorney which the commissioner had with the applicant or petitioner, the commissioner must report this fact to the commission. The commission shall then decide the extent to which the involved commissioner shall participate in the proceedings concerning said applicant or petitioner. In the event that a commissioner does not vote, the fact that a commissioner did not vote may be announced publicly. The commission may disclose its decision on this issue.

B. No commissioner shall participate in any retention proceeding regarding a judge or justice who has a petition for retention pending before the commission pursuant to Rule 13 if that commissioner has a substantive matter pending before that judge or justice.

In light of Sections 3.A. and 3.B. of the JSC Rules, absent evidence to the contrary, a reasonable and impartial observer would presume: (1) that a commissioner whose employer has a substantive matter actively pending before a petitioning judge would necessarily disclose this matter to the JSC; and (2) a commissioner who has a substantive matter actively pending before a petitioning judge would necessarily remove himself or herself from participation in the retention proceeding for that judge. The burden is on the commissioner to inform himself or herself of conflicts and take the appropriate action, not on the judge to remove himself or herself from presiding over judicial proceedings based on the possibility that a commissioner might participate in a retention proceeding in violation of the JSC Rules. We note that Section 3.A. of the JSC Rules expressly permits the JSC to disclose that a particular commissioner did not vote on a petition,

which disclosure would remove any concern or doubt by a party in Jou's position. Although the record in this case is silent on whether any commissioner removed herself or himself from Judge McKenna's retention petition, Jou failed to overcome the presumption that the JSC acted in accordance with its rules and otherwise failed to establish disqualifying facts in this case. Thus, we conclude that Judge McKenna did not abuse her discretion when she declined to disqualify herself in this case.

### (2) *Notice of Denial*

Jou argues that the agency and the Circuit Court erred in finding Island was not required to issue a formal notice of denial of benefits pursuant to HRS § 431:10C–304(3)(B) after it made both reduced and partial payments on Jou's claims. We agree.

At the time relevant to Jou's claim for payment, HRS § 431:10C–304 (1993) provided in part:

> For purposes of this section, the term "no-fault insurer" includes no-fault self-insurers. Every no-fault insurer shall provide no-fault benefits for accidental harm as follows:
>
> . . .
>
> (3)(A) Payment of no-fault benefits shall be made within thirty days after the insurer has received reasonable proof of the fact and amount of benefits accrued, and demand for payment thereof.
>
> (B) Subject to section 431:10C–308.6,[6] relating to peer review, if the insurer elects to deny a claim for benefits in whole or in part, the insurer shall

within thirty days notify the claimant in writing of the denial and the reasons for the denial. The denial notice shall be prepared and mailed by the insurer in triplicate copies and be in a format approved by the commissioner. In the case of benefits for services specified in section 431:10C–103(10)(A)(i) and (ii),[7] the insurer shall also mail a copy of the denial to the provider.

(C) If the insurer cannot pay or deny the claim for benefits because additional information or loss documentation is needed, the insurer shall, within the thirty days, forward to the claimant an itemized list of all the required documents. In the case of benefits for services specified in section 431:10C–103(10)(A)(i) and (ii), the insurer shall also forward the list to the service provider.

In COL No. 1, the agency found that formal notice pursuant to HRS § 431:10C–304(3)(B) was not required because Island had only challenged the amount charged and the procedure codes used, but had not denied the benefits as unnecessary or unreasonable. In essence, the agency found HRS § 431:10C–304(3)(B) inapplicable to billing disputes.

In a factually similar case, the Hawai'i Supreme Court held that the notice provision in HRS § 431:10C–304(3)(B) applies to billing disputes. In *Orthopedic Assoc. of Hawaii, Inc. v. Haw'n Ins. & Guar. Co., Ltd.*, 109 Hawai'i 185, 191, 124 P.3d 930, 936 (2005), after the providers submitted bills, the insurers altered the treatment codes, paid reduced amounts under the altered codes, and then offered to negotiate with the

---

6. On June 19, 1997, HRS § 431:10C–308.6, which provided for peer review of denied claims, was repealed by Act 251. 1997 Haw. Sess. L., Act 251 § 50 at 551. The repeal went into effect on January 1, 1998. Act 251 at 553.

7. HRS § 431:10C–103 (10)(A)(i)and(ii) (1993) provides:
   (10)(A) No fault benefits, sometimes referred to as personal injury protection benefits, with respect to any accidental harm means:
      (i) All appropriate and reasonable expenses necessarily incurred for medical, hospital, surgical, professional, nursing, dental, opto-

metric, ambulance, prosthetic services, products and accommodations furnished, and x-ray. The foregoing expenses may include any nonmedical remedial care and treatment rendered in accordance with the teachings, faith, or belief of any group which depends for healing upon spiritual means through prayer;
   (ii) All appropriate and reasonable expenses necessarily incurred for psychiatric, physical, and occupational therapy and rehabilitation[.]

providers for the unpaid portions. On appeal, the providers argued that the insurers were required to issue formal written notices of denial for their partial payment of medical bills pursuant to HRS § 431:10C–304(3)(B). *Id.* The insurers argued that the notice provision did not apply because they had "accepted the treatment rendered as reasonable and appropriate and the sole dispute concerns the appropriate charges for the treatment." *Id.* at 195, 124 P.3d at 940. The insurers claimed that Hawaii Administrative Rules (**HAR**) § 16–23–120, which provides a billing dispute resolution mechanism, controlled and that HRS § 431:10C–304 was therefore inapplicable. *Id.* at 197, 124 P.3d at 942.

The supreme court disagreed and found that the plain language of HRS § 431:10C–304 did not limit an insurer's obligation to provide notice only when the insurer elects to deny a claim for treatment services. *Id.* at 195, 124 P.3d at 940. The Court therefore concluded that the notice requirement under HRS § 431:10C–304(3)(B) is triggered when a claim for benefits was denied in whole or in part, and includes situations where there is a denial or partial denial of "treatment service *and/or the charges therefor.*" *Id.* at 196, 124 P.3d at 941 (emphasis added). The Court also held that HAR § 16–23–120, an agency rule which was promulgated after HRS § 431:10C–304 was enacted, was void to the extent that it conflicted with HRS § 431:10C–304(3)(B). *Id.* at 197, 124 P.3d at 942.

■ In light of *Orthopedic Assoc.,* we hold that HRS § 431:10C–304(3)(B) applies to billing disputes and the statute's notice requirement is triggered by a partial denial of claims in the form of reduced or partial payments by an insurer. A provider should not need to chase a payment/denial decision or be left to guess whether further payment might be forthcoming. We therefore conclude that COL No. 1 was wrong and that Island was required under HRS § 431:10C–304(3)(B) to provide denial notice even though it made reduced and partial payments on Jou's claims.

(3) *Interest on Payments Due*

■ Next, we address Jou's argument that he is entitled to interest on the balance withheld by Island thirty days after he submitted his billing statements and demand for payment, pursuant to HRS § 431:10C–304(4). When Jou rendered treatment and submitted his billing statements, HRS § 431:10C–304(4)(1993) provided:

Amounts of benefits which are unpaid thirty days after the insurer has received reasonable proof of the fact and the amount of benefits accrued, and demand for payment thereof, after the expiration of the thirty days, shall bear interest at the rate of one and one-half per cent per month.

Island maintains it did not challenge the treatment provided by Jou as inappropriate or unreasonable; rather, the dispute concerns "the amount of the charge or the correct fee or procedure code used." Island thus claims that HRS § 431:10C–304(4) does not apply to the so-called "billing disputes" in this case. Instead, Island contends that HRS § 431:10C–304(6) clarifies that billing disputes are governed by HRS § 431:10C–308.5. HRS § 431:10C–304(6)(Supp.2004) provides:

Disputes between the provider and the insurer over the amount of a charge or the correct fee or procedure code to be used under the workers' compensation supplemental medical fee schedule shall be governed by section 431:10C–308.5[.]

HRS § 431:10C–308.5(e)(Supp.2004) provides:

In the event of a dispute between the provider and the insurer over the amount of a charge or the correct fee or procedure code to be used under the worker's compensation supplemental medical fee schedule, the insurer shall:

(1) Pay all undisputed charges within thirty days after the insurer has received reasonable proof of the fact and amount of benefits accrued and demand for payment thereof; and

(2) Negotiate in good faith with the provider on the disputed charges for a period up to sixty days after the insurer has received reasonable proof of the

fact and amount of benefits accrued and demand for payment thereof.

If the provider and the insurer are unable to resolve the dispute, the provider, insurer, or claimant may submit the dispute to the commissioner, arbitration, or court of competent jurisdiction. The parties shall include documentation of the efforts of the insurer and the provider to reach a negotiated resolution of the dispute.

The Circuit Court agreed with Island and the agency, and found that the interest provision in HRS § 431:10C–304(4) does not apply to this case and that HRS § 431:10C–308.5 applies.[8] Accordingly, the Court ruled that, "[t]here is no provision for interest payments under [HRS § 431:10C–308.5]."

Although *Orthopedic Assoc.* discusses the notice provision under HRS § 431:10C–304, rather than the statute's interest provision, we nevertheless find that *Orthopedic Assoc.* offers important guidance on the resolution of this issue. In *Orthopedic Assoc.*, the supreme court looked to the plain language of HRS § 431:10C–304(3)(B) in finding the applicable notice provision was not limited to treatment disputes, as opposed to billing disputes. 109 Hawai'i at 195, 124 P.3d at 940.[9] Similarly, nothing in HRS § 431:10C–304(4)(1993) limits interest payments to treatment disputes, as opposed to billing disputes.

We also note that Act 138, which amended HRS §§ 431:10C–304 and 431:10C–308.5 by adding section 6 to HRS § 431:10C–304 and section (e) to HRS § 431:10C–308.5, was not approved until May 30, 2000, after the treatments and bills underlying this case.[10] 2000 Haw. Sess. L. Act 138, § 4 at 271. Therefore, HRS § 431:10C–308.5(e) does not apply here.[11] Indeed, under HRS § 431:10C–308.5(e), for disputes relating to "the amount of a charge or the correct fee and procedure code," an insurer is required to pay all undisputed charges within thirty days, but is allowed to negotiate in good faith for up to sixty days on all disputed charges.[12] Although HRS § 431:10C–308.5(e) contains no express interest provision, there is nothing in HRS § 431:10C–308.5 that relieves an insurer from paying interest on all payments made more than thirty days after "reasonable proof" of the fact and amount of benefits accrued. HRS § 431:10C–308.5(e) does not negate, during the pendency of billing disputes, the accrual of interest pursuant to HRS § 431:10C–304(4).

■ For these reasons, we conclude that the agency's COL No. 2 is incorrect and that HRS § 431:10C–304(4) is applicable when a payment due is delayed in conjunction with a billing dispute.

■ Alternatively, Island argues that even if HRS § 431:10C–304(4) applies, Jou failed to provide "reasonable proof of the fact and the amount of benefits accrued." In other words, Island maintains that because it never received "reasonable proof" from Jou, the thirty-day deadline for payment or denial never began running and interest never began accruing. We disagree.

The Hawai'i Supreme Court articulated the "reasonable proof" required under HRS

---

8. On the issue of interest, the agency concluded: "the Hearings Officer cannot find any authority allowing for the payment of interest allegedly accruing to Provider while Respondent disputed Provider's application of the CPT codes[.]" Thus, similar to its analysis of the statute's notice provision, as discussed above, the agency essentially found Jou was not entitled to interest because HRS § 431:10C–304(4) was inapplicable to billing disputes.

9. Additionally, the Court in *Orthopedic Assoc.* rejected the insurer's argument that HAR § 16–23–120, an administrative rule providing a dispute resolution mechanism for disputed charges, fees and codes, removed all such disputes from the control of HRS § 431:10C–304(3). 109 Hawai'i at 197, 124 P.3d at 942.

10. Jou provided treatment for Dereas between 1996 and 1998, and submitted bills to Island within one month of treatment during this time period.

11. *See* HRS § 1–3 (1993)("No law has any retrospective operation, unless otherwise expressed or obviously intended."); *see also Richard v. Metcalf*, 82 Hawai'i 249, 257, 921 P.2d 169, 177 (1996) (finding amendment to an insurance statute did not apply to treatment of injuries sustained by a patient prior to the amendment's effective date).

12. Island does not argue that it was, in fact, negotiating with Jou during the sixty day periods after receipt of Jou's invoices.

§ 431:10C–304 to trigger either payment or denial of a claim as follows:

> In other words, an insurer shall pay no-fault benefits within thirty days of receipt of a provider's billing statement *showing* "*the fact*," *i.e., the treatment services, and* "*the amount of benefits*," *i.e., the charges or costs of treatment services.*

*Orthopedic Assoc.*, 109 Hawai'i at 195, 124 P.3d at 940 (emphasis added). Thus, in the first instance, Jou was required to submit nothing more than his billing statement showing the treatment services he performed, and the charges or costs of those services. Jou did so.[13] Once Island received Jou's billing statements and demand for payment, Island was required to either pay or deny Jou's claims within thirty days. Island was not permitted to withhold payment for an indeterminate period of time, without interest, while it sought additional information from Jou. *See TIG Ins. Co. v. Kauhane*, 101 Hawai'i 311, 326–27, 67 P.3d 810, 825–26 (App.2003)(noting that "given the legislative intent that no-fault insurance claims be promptly acted upon," claims must be either paid or denied within a specific time period). It appears that Island withheld payment on the bills at issue for somewhere between one and three years before paying them in full.

In *TIG Ins.*, we rejected the insurer's argument that its requests for additional information from providers tolled the thirty-day deadline in which it had to make payments or issue a denial. 101 Hawai'i at 326, 67 P.3d at 825. Instead, we held: "Nowhere in HRS § 431:10C–304(3) is there any language authorizing an insurer to continue to request additional information or loss documentation from a claimant or a claimant's medical providers more than thirty days after the insurer has received a claim for no-fault benefits and a demand for payment." *Id.* at 326–27, 67 P.3d at 825–26.[14]

Moreover, as discussed in *TIG Ins. v. Kauhane*, the history of HRS § 431:10C–304 evinces a clear legislative intent that insurers investigate and act on claims promptly. 101 Hawai'i at 323–25, 67 P.3d at 822–24. The payment of interest after thirty days was intended to "substantially serve to strengthen the former law" in this regard. *Id.* at 325, 67 P.3d at 824 (citations omitted). While the insurer has an opportunity to submit to the claimant one itemized list of additional information or loss documents, that opportunity does not override the legislative intent that an insurer must promptly act on the request for payment. If necessary information or documentation is not provided, the insurer is free to deny the claim. 101 Hawai'i at 327, 67 P.3d at 826. Failure to act promptly may

---

**13.** Although Jou's original invoices were not in the record before the agency, Island does not deny receiving the invoices, which it ultimately paid in full, or allege that Jou failed to submit bills showing the treatment and charges. The record contains Island's two requests for additional information, neither of which indicate that Jou failed to show " 'the fact,' *i.e.,* the treatment services, and 'the amount of benefits,' i.e., the charges or costs of treatment services." *See* n. 14 below.

**14.** To the extent that Island's failure to pay or deny Jou's claims was based on an alleged lack of sufficient information to support the declared treatment codes in the billing statements, Island was required to forward to Jou *and claimant*, within thirty days, "an itemized list of all the required documents." HRS § 431:10C–304(3)(C)(1993); *TIG Ins. v. Kauhane*, 101 Hawai'i at 327, 67 P.3d at 826. The record here shows that Island responded to only two out of six of Jou's initially disputed billing statements with requests for additional information. A letter dated September 3, 1996, read: "Please submit all applicable office notes and/or documentation regarding the services rendered on

the attached billing." Similarly, a letter from Island on May 27, 1997, stated: "In order to analyze the attached billing we will need the following information from the provider. Please specifically identify the name of the person who performed these services. Also include the specialty of the provider." Even assuming these letters to Jou could be considered "itemized lists" in response to two of Jou's billing statements, Island points to no finding or evidence that such letters were sent to Dereas, the claimant, as required by the statute. *See* HRS § 431:10C–304(3)(C)(1993). On the contrary, Island cites to FOF No. 3 which states (emphasis. added): "In response to various bills …, Respondent requested further information and documentation *from Provider*." Island's four remaining letters to Jou either denied or downcoded his claims and stated: "Based on the available information, the services rendered appear to be best described by this code"; "No allowance was recommended for this service as it is considered to be outside the scope of the provider's specialty."

**490**

result in the accrual of interest. Island did not act promptly on the payments that undisputedly were due to Jou.

For these reasons, we conclude that the Circuit Court erred in finding Jou was not entitled to interest on the balance withheld by Island. Based on the record before us, we further conclude that interest began to accrue on Jou's claims at the expiration of thirty days after the date Island received Jou's original billing statements until the date Island made full payment on May 25, 1999. *See* HRS § 431:10C–304(4)(1993).

#### (4) *Constitutional Arguments*

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, we conclude that Jou's other contentions are without merit.

#### CONCLUSION

In light of the foregoing, we vacate the Circuit Court's February 17, 2005 Order and May 23, 2005 Judgment and remand for further proceedings not inconsistent with this opinion.

